UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANGELINE CAPITAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-1428-SNLJ |
| | ) |
| FORREST L. PRESTON, LC | ) |
| HEALTHCARE HOLDING | ) |
| COMPANY, LLC, and LIFE CARE | ) |
| CENTERS OF AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is about an alleged oral contract. Plaintiff claims the parties agreed to the following: plaintiff "would be exclusively responsible for performing all [f]inancing [s]ervices for" defendant Life Care Centers of America; in return, plaintiff would receive 1% of the total financed amount when Life Care Centers of America closed the transaction. (#45 at 2.) Plaintiff alleges it performed financing services to help defendant Life Care Centers of America buy properties. Despite doing this work and finding four potential lenders, defendant Life Care Centers of America obtained its own financing through a different third-party lender (not one of the four plaintiff found). Defendant Life Care Centers of America closed on the $69 million transaction and, according to plaintiff, stiffed plaintiff on the 1% fee of $690,000.

Defendants claim the parties never entered into a valid, enforceable contract because the parties' oral agreement lacked essential terms and mutual assent. As such,

1

plaintiff was not entitled to the 1% fee. Defendants have moved for summary judgment (#32), and the issue is ripe. Because plaintiff has presented evidence showing a genuine issue of material fact for each of its claims, the motion will be denied.

I.     **Factual Background**

**The Parties.**  Plaintiff performs consulting and brokerage-related services relating to debt and equity financing.

The defendants are all connected. Defendant Forrest Preston is the "chief manager" of defendant LC Healthcare Holding Company and the sole shareholder of defendant Life Care Centers of America. LC Healthcare entered into the lease (explained below) that is at the heart of this dispute. Life Care Centers of America owned and operated the subtenants of the lease, all of which were affiliated with defendant Preston.

**The Oral Agreement.**  The parties disagree on the terms of the oral agreement. Although the Court must resolve the evidentiary conflicts in the plaintiff's favor, the Court will still explain the defendants' positions when relevant.

Plaintiff alleges, in 2001, defendant Preston met with plaintiff's sole member and manager ("plaintiff's manager") at a restaurant in Missouri. During this meeting, "[t]he parties agreed that [plaintiff] would be exclusively responsible for performing all [f]inancing [s]ervices for [Life Care Centers of America], meaning, that no other third-party broker would be used." (#45-1 at 14, ¶ 4.) "In exchange for the [f]inancing [s]ervices, [defendant] Preston agreed to pay (or cause the borrowing entity to pay) [plaintiff] a fee, calculated as one percent (1%) of the total financed amount[.]" (#45-1 at 14, ¶ 5.) "The [f]ee was to be paid to [plaintiff] upon closing of a transaction for which it

provided [f]inancing [s]ervices." (#45-1 at 14, ¶ 6.) Plaintiff would receive no fee if it provided financing services on a transaction that failed to close. That is, plaintiff got nothing if Life Care Centers of America obtained no funding.

Defendants' understanding of the oral agreement is similar to plaintiff's: "Mr. Preston orally agreed—in exchange for being made a partner in [plaintiff]—to allow [plaintiff] to perform [Life Care Centers of America]'s loan placement and advisory services for a 1% fee of the total financed amount." (#33 at 11) (footnote omitted). But defendants note "the alleged agreement did not define 'exclusive,' and whether it precluded the ability of [Life Care Centers of America] to finance its projects internally without use of a broker." (#33 at 11) (footnote omitted). As such, defendants argue plaintiff "was only to be paid if [Life Care Centers of America] closed on a deal with a lender procured by [plaintiff]." (#49 at 1.)

Both parties agree they never reduced their agreement to writing.

**Parties' Course of Conduct.** Plaintiff provided financing services for Life Care Centers of America from early 2001 until late 2012. Not once during this time did Life Care Centers of America use any other outside broker. In this time, plaintiff assisted Life Care Centers of America in closing at least ninety-nine loans. Of these ninety-nine, plaintiff was paid at closing for ninety-seven loans, and plaintiff received a 1% fee for at least eighty-six loans. Also during this time, Life Care Centers of America arranged its own financing for eight loans. Plaintiff did not assist with these loans and received no fee in connection with them.

Over time, plaintiff began helping Life Care Centers of America obtain financing through the U.S. Department of Housing and Urban Development ("HUD"). For the HUD loans, "the parties agreed that [plaintiff]'s services warranted a reduced fee of 0.5% of the total financed amount." (#45-1 at 16, ¶ 20.) From early 2001 until late 2012, plaintiff assisted Life Care Centers of America in closing at least fifty-seven HUD loans, and plaintiff received a 0.5% fee for fifty-six of them. In the sole exception, plaintiff's manager and defendant Preston "had a joint ownership interest" in the project. (#45-1 at 17, ¶ 22.) This was a recognized exception to the agreement, according to plaintiff, and plaintiff "waived its [f]ee for [f]inancing [s]ervices performed on behalf of entities in which [plaintiff's manager] and [defendant] Preston had a joint ownership interest on three . . . occasions." (#45-1 at 17, ¶ 24.)

In sum, plaintiff generally received a 1% fee for the non-HUD loans it assisted with, so long as Life Care Centers of America closed on the loan. For HUD loans, plaintiff received a reduced fee. For projects in which plaintiff's manager and defendant Preston had a joint ownership interest, plaintiff waived its fee. It's unclear why plaintiff did not receive the 1% fee for the thirteen non-HUD loans, and it's also unclear what fee plaintiff in fact received for those loans.

Defendants interpret the parties' course of conduct differently. Instead of an agreed-to fee of 1% with carved out exceptions for HUD loans and joint ownership projects, defendants argue "the parties' course of dealing as to the fee paid to [plaintiff] for services was fluid[.]" (#33 at 15.) Defendants claim "the 1% fee was neither

4

assumed nor guaranteed," and the parties instead discussed the plaintiff's fee before a project closed. (#33 at 14.)

**This Dispute.** In late 2002, LC Healthcare Holding Company entered into a lease with a health care real estate investment trust. The lease gave LC Healthcare Holding Company an option to purchase the leased property during a window at the end of the lease. In 2011, plaintiff began evaluating the purchase option for defendants. For roughly nine months, plaintiff worked on the purchase option and communicated with defendants about this work. Through this work, plaintiff secured financing proposals from four potentials lenders. Eventually, Life Care Centers of America informed plaintiff that it planned to obtain financing (on its own) through a different third-party lender. Life Care Centers of America closed on the third-party loan and never paid plaintiff any fee.

## II.     Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant v. Associated Elec. Co-op, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing that there

is sufficient evidence that will allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In ruling on a motion for summary judgment, the court must review the facts in the light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### III. Discussion

The Court will analyze each count separately.

#### A. Breach of Contract (Count I)

The parties agree the alleged oral agreement did not include a choice-of-law provision, so the Court must decide whether Tennessee or Missouri law applies. "In a diversity action, '[t]he district court must apply the choice-of-law rules of the forum state.'" *Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc.*, No. 4:05-CV-2115-ERW, 2007 WL 1774434, at *4 (E.D. Mo. June 18, 2007) (alteration in original) (*quoting Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003)). Thus, this Court looks to Missouri law to decide whether there is a conflict of laws, and if so, whether Missouri or Tennessee law applies.

"Under Missouri law, a conflict of laws does not exist 'unless the interests of the two states cannot be reconciled.'" *Interstate Cleaning Corp.*, 325 F.3d at 1028 (*quoting*

6

*Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999)). If there's no conflict, Missouri law applies. *Id.*

For a breach-of-contract claim, the parties seem to agree there is no conflict between Missouri and Tennessee law. (#33 at 5, 6 n.26; #45 at 7 n.2.) The heart of this claim is whether the parties entered into an enforceable contract, and both Missouri and Tennessee law require evidence that (1) both parties mutually assented to the essential terms and (2) the essential terms are sufficiently definite. *See Warren v. Tribune Broad. Co., LLC*, 512 S.W.3d 860, 864 (Mo. Ct. App. 2017); *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). Defendants attack these two elements only, so there is no conflict between Missouri and Tennessee law. As such, the Court will look to Missouri law.

Missouri law requires a "mutuality of assent or a meeting of the minds to the essential terms of a contract." *Warren*, 512 S.W.3d at 864 (*quoting Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003)). "To show 'a meeting of the minds,' the plaintiff must show that the terms of the contract were certain or capable of being made certain." *Bootheel Ethanol Invs., L.L.C. v. SEMO Ethanol Co-op.*, No. 1:08-CV-59-SNLJ, 2011 WL 4549613, at *3 (E.D. Mo. Sept. 30, 2011) (*quoting Tom's Agspray, LLC v. Cole*, 308 S.W.3d 255, 259 (Mo. Ct. App. 2010)). "To determine whether a meeting of the minds has occurred and an agreement has been reached, the court looks to the intention of the parties as expressed or manifested in their words or acts." *Id.* (*quoting Karsch v. Carr*, 807 S.W.2d 96, 99 (Mo. Ct. App. 1990)).

7

First, defendants argue "[t]he agreement is not definite because it does not include essential terms of a brokerage agreement." (#33 at 10.) To again use the defendants' own understanding of the oral agreement, "Mr. Preston orally agreed—in exchange for being made a partner in [plaintiff]—to allow [plaintiff] to perform [Life Care Centers of America]'s loan placement and advisory services for a 1% fee of the total financed amount." (#33 at 11) (footnote omitted). In defendants' opinion, this was not enough. Specifically, the oral agreement did not contemplate "other essential terms for financial brokerage agreements," such as (1) the scope of projects, (2) the type of financing, (3) term or termination, (4) the definition of exclusive, (5) a "break-up" fee provision that would govern if plaintiff secured a lender and Life Care Centers of America did not close, and (6) a provision that would govern if plaintiff submitted proposed term sheets but Life Care Centers of America instead secured financing on its own.

"While a contract's essential terms must be sufficiently definite, the 'details or particulars' of the contract need not be." *Warren*, 512 S.W.3d at 864 (*quoting Olson v. Curators of Univ. of Mo.*, 381 S.W.3d 406, 412 (Mo. App. 2012)). "What is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Id.* (*quoting Olson*, 381 S.W.3d at 412). The Court is "guided by principles of law applied with common sense and in light of experience when determining whether the terms are too uncertain to create an enforceable contract." *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *5 (*quoting Scott v. Pub. Sch. Ret. Sys. of Mo.*, 764 F. Supp. 2d 1151, 1162 (W.D. Mo. 2011)).

8

Given defendants' understanding of the oral agreement, the parties' course of conduct, and the deferential summary judgment standard, this Court finds the terms of the oral agreement were at least "capable of being made certain." *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *3 (*quoting Tom's Agspray*, 308 S.W.3d at 259). Specifically, plaintiff has presented evidence that would allow a jury to find that the parties agreed plaintiff would be exclusively responsible for performing all financing services for Life Care Centers of America. Plaintiff presented evidence showing that, from early January 2001 through late 2012, Life Care Centers of America never used another outside broker.

Plaintiff has also presented evidence that would allow a jury to find that, in exchange for the financing services, defendant Preston agreed to pay (or cause the borrowing entity to pay) plaintiff a fee, 1% of the total financed amount. Plaintiff presented evidence showing that it received a 1% fee on eighty-six of ninety-nine non-HUD loans for which it provided financing services. And plaintiff presented evidence from which a jury could find the parties carved out exceptions for HUD loans and projects in which plaintiff's manager and defendant Preston had a joint ownership interest.

Finally, plaintiff has presented evidence that would allow a jury to find the fee was due when Life Care Centers of America closed a transaction for which plaintiff provided financing services. Plaintiff presented evidence showing it was paid at closing for ninety-seven of the ninety-nine non-HUD loans for which it provided financing services. Additionally, plaintiff presented evidence showing it never received a fee when Life Care Centers of America failed to close.

At bottom, a reasonable factfinder could find that the alleged oral contract was sufficiently definite. Although defendants want additional terms spelled out, it cites no authority that says those terms are in fact essential in this context. With no showing that the additional terms are essential, they are "details or particulars," which need not be definite. *Warren*, 512 S.W.3d at 864. Indeed, "as the Missouri Supreme Court has recognized, 'to require accuracy of expression on the part of lay witnesses . . . would make impossible the establishment of such oral contracts by the untutored .'" *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *5 (alteration in original) (*quoting Sportsman v. Halstead*, 147 S.W.2d 447, 454 (Mo. 1941)).

Second, defendants argue "[t]here is no mutual assent of the parties because the terms of the initial discussion contradict the parties' ultimate course of dealing." (#33 at 12.) Again, in deciding whether there was mutual assent, the Court looks to the parties' acts. *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *3. "[W]hat a person may have intended subjectively is not controlling. The standard is what a reasonably prudent person would be led to believe from the actions and words of the parties and this is a question to be resolved by the trier of fact." *Id.* at *5 (*quoting Silver Dollar City, Inc. v. Kitsmiller Const. Co.*, 931 S.W.2d 909, 914 (Mo. Ct. App. 1996)). Defendants claim "the initial 'agreement' was not acted upon in a way that demonstrated that it was intended by the parties to be definite." (#33 at 13.) In support, defendants make three points.

One, defendants argue plaintiff was not exclusively responsible for performing financing services. In support, defendants highlight transactions where Life Care Centers of America performed its own financing services. But those examples are consistent with

plaintiff's understanding of the oral agreement—that Life Care Centers of America agreed not to use any other third-party broker. So the jury could find that the parties' course of dealing shows the parties agreed "exclusive" meant "no other third-party brokers."

Two, defendants argue "the parties' course of dealing indicate that the 1% fee was neither assumed nor guaranteed." (#33 at 14.) In support, defendants note that (1) defendant Preston and plaintiff's manager discussed plaintiff's fee before a project closed, (2) plaintiff's fee was 0.5% or less for HUD loans, (3) plaintiff waived its fee for projects in which plaintiff's manager held an ownership interest, and (4) plaintiff received no fee for projects it worked on that failed to close. Defendants' final three points are consistent with plaintiff's understanding of the oral agreement. And for the reasons explained above, the jury could find that the parties' course of dealing shows the parties agreed to a 1% fee and later carved out specific exceptions. A jury will decide whether the parties' actions would lead "a reasonably prudent person," *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *5, to believe the parties (1) agreed to 1% and later carved out exceptions, as plaintiff argues, or (2) never agreed to 1%, as defendant argues.

Three, defendants argue, because the situation that led to this lawsuit never happened in the past, there was no meeting of the minds as to what would happen if plaintiff found a lender and Life Care Centers of America rejected that lender in favor of a lender it found on its own. According to defendants, "[b]ecause the initial discussion between [defendant] Preston and [plaintiff] lacked this essential element, this Court cannot determine the respective obligations of the parties in the scenario presented by this

11

case." (#33 at 16.) Not so. If the jury adopts plaintiff's understanding of the alleged contract, and the evidence would allow the jury to do so, the parties' obligations are clear: defendants would owe plaintiff $690,000 (1% of the total financed amount) because plaintiff provided financing services and Life Care Centers of America ultimately closed on the deal.

Although defendants' arguments are unpersuasive, the Court notes that it is not endorsing plaintiff's understanding of the oral agreement or interpretation of the parties' course of dealing. Instead, the Court is simply applying the proper standard under Missouri law: "The standard is what a reasonably prudent person would be led to believe from the actions and words of the parties and this is a question to be resolved by the trier of fact." *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *5 (*quoting Silver Dollar City*, 931 S.W.2d at 914). This standard also bars defendants' argument that there was no mutual assent as to when plaintiff would receive a fee because the parties disagree on whether plaintiff is entitled to a fee in connection with the deal in this case. But the parties' subjective intentions are not controlling. *Id.*

For all these reasons, plaintiff's breach-of-contract claim survives summary judgment.

### B. Breach of the Duty of Good Faith and Fair Dealing (Count III)

For a breach-of-the-duty-of-good-faith-and-fair-dealing claim, the parties again seem to agree there is no conflict between Missouri and Tennessee law. (#45 at 1 n.1; #49 at 10.) Finding no conflict, *see, e.g.*, *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412–13 (Mo. Ct. App. 2000); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395

12

S.W.3d 653, 559–60 (Tenn. 2013), the Court will look to Missouri law, *Interstate Cleaning Corp.*, 325 F.3d at 1028.

Under Missouri law, "the beginning point for any analysis of a claim for breach of the covenant of good faith and fair dealing is to recognize that it is a contract action[.]" *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 188 (Mo. Ct. App. 2017). Defendants' sole argument is that this claim must fail because the parties never entered into an enforceable agreement. Having already found that plaintiff presented evidence from which a jury could find the parties did enter into an enforceable agreement, this claim also survives summary judgment.

### C. Unjust Enrichment and Quantum Meruit (Count II)

Again, the Court must first decide whether Missouri or Tennessee law applies. For this count, the parties disagree on whether there is actually a conflict. But conflict or not, there's no practical difference because Missouri law applies either way. If there were no conflict, the Court would look to Missouri law. *Interstate Cleaning Corp.*, 325 F.3d at 1028. And, for the reasons explained below, Missouri law also applies after applying Missouri's choice-of-law test.

When resolving a conflict of law for contract claims, Missouri courts apply the most significant relationship test set out in Section 188 of the *Restatement (Second) of Conflicts of Laws*. *Sachs Elec. Co. v. HS Const. Co.*, 86 S.W.3d 445, 454–55 (Mo. Ct. App. 2002) (endorsing the circuit court's application of Section 188 for a quantum meruit claim). Under Section 188, a court considers the following factors when the parties did not make an effective choice of law (which they did not here): the place of contracting,

the place where the contract was negotiated, the place where contract performance occurred, the location of the subject matter of the contract, and the contracting parties' place of business and place of incorporation. *Restatement (Second) of Conflicts of Laws* § 188(2). A court must "evaluate[ these factors] according to their relative importance with respect to the particular issue." *Id.*

Here, the factors are a mixed bag. According to plaintiff, the alleged oral agreement was negotiated and finalized in Missouri. Plaintiff performed "*almost all* of its services in Missouri." (#45 at 17.) But plaintiff's manager delivered the financing options to defendant Preston in Tennessee, and defendants "presumably accepted the benefit of [plaintiff]'s services in Tennessee[.]" (#45 at 18.) Plaintiff is a resident of Missouri, while all defendants are residents of Tennessee. Finally, "the nexus of all finance decisions in connection with the [lease and loan] at issue in this lawsuit was in the [Life Care Centers of America] headquarters in Tennessee." (#33 at 8) (footnote omitted).

Given the nature of this dispute—that plaintiff provided defendants with services and should be compensated for those services—the Court finds that the place performance is the most important factor. Because the services mostly were performed in Missouri, and because the other factors are a mixed bag, the Court finds that Missouri has the most significant relationship to this transaction.

Additionally, the Court must also consider Section 6 of the *Restatement (Second) of Conflicts of Laws*. Section 6 lists these factors: (1) "the needs of the interstate and international systems," (2) "the relevant policies of the forum," (3) "the relevant policies

of other interested states and the relative interests of those states in the determination of the particular issue," (4) "the protection of justified expectations," (5) "the basic policies underlying the particular field of law," (6) "certainty, predictability and uniformity of result, and" (7) "ease in the determination and application of the law to be applied." None of these factors suggest Tennessee law should apply. And factor six tips the scale in favor of applying Missouri law because Missouri law applies to the other causes of action. As such, the Court will look to Missouri law for the unjust enrichment and quantum meruit claims.

### 1. Unjust Enrichment

Under Missouri law, the elements for an unjust enrichment claim are "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable." *Am. Eagle Waste Indus., LLC v. St. Louis Cty.*, 379 S.W.3d 813, 829 (Mo. banc 2012) (*quoting Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. App. 2010)).

Most of defendants' argument in its initial brief focuses on an element of Tennessee law that is not an element under Missouri law. Having concluded Missouri law applies, that argument is immaterial. In their reply brief, defendants argue they have not been unjustly enriched. Specifically, they argue (1) plaintiff's services were unnecessary, (2) the lending proposals plaintiff submitted were "substantially inferior" to the terms defendants found on their own, and (3) plaintiff played no role in developing

15

the relationship with the third-party lender or in procuring the financing from the third-party lender. Plaintiff disputes this.

Plaintiff alleges it "helped procure [the third-party lender] because it developed a financing strategy which was ultimately adopted by [Life Care Centers of America] to secure funds through [the third-party lender]. . . . Absent the significant [f]inancing [s]ervices already performed by [plaintiff], the [loan with the third-party lender] could not have closed in a timely fashion." (#45-1 at 8.) This raises a genuine issue of material fact, so this count survives summary judgment.

2. **Quantum Meruit**

Under Missouri law, "*[q]uantum meruit* is a request for 'the reasonable amount of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship.'" *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 673 n.3 (Mo. banc 2011) (*quoting Black's Law Dictionary* 1255 (7th ed. 1999)).

Defendants argue that Missouri law also includes one more element: the plaintiff must prove the services were requested and actually received *with an expectation of compensation*. Although defendants cite authority from the Missouri Courts of Appeals, the most recent decision of the Missouri Supreme Court controls. *DeBaliviere Place Ass'n*, 337 S.W.3d at 673 n.3. Furthermore, Missouri Supreme Court-approved verdict director for quantum meruit does not include this language. *See, e.g.*, Missouri Approved Instructions–Civil 26.05 (7th ed.). Thus, defendants arguments related to this element are immaterial.

16

Next, defendants argue that they never "accepted" plaintiff's services because they procured their own financing from the third-party lender. Plaintiff disagrees; it argues the parties worked together on the financing for several months. And as explained above, plaintiff alleges it "helped procure [the third-party lender] because it developed a financing strategy which was ultimately adopted by [Life Care Centers of America] to secure funds through [the third-party lender]. . . . Absent the significant [f]inancing [s]ervices already performed by [plaintiff], the [loan with the third-party lender] could not have closed in a timely fashion." (#45-1 at 8.) This raises a genuine issue of material fact, so this count survives summary judgment.

**IV. Conclusion**

Plaintiff has shown there is at least a genuine issue of material fact barring summary judgment for each of its four claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#32) is **DENIED**.

So ordered this   22nd   day of May 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE